IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> v. <br><br> MARLON J. MOORE, <br><br> Defendant. | Case No. 4:15-cr-1 |

**OPINION AND ORDER**

Before the Court is Defendant Marlon J. Moore's Motion for Compassionate Release. ECF No. 64. The motion asks the Court to order that the remainder of the defendant's sentence be served in home confinement or, in the alternative, to issue a non-binding recommendation that the Federal Bureau of Prisons ("BOP") transfer the defendant to home confinement because the "COVID-19 pandemic combined with [his] age . . . and medical conditions including hypertension and obesity, present an 'extraordinary and compelling reason' for compassionate release." *Id.* at 1. For the reasons stated below, the motion is **DENIED**.

I.   **BACKGROUND**

The defendant, Marlon J. Moore, was charged on January 12, 2015, with conspiracy to distribute and possess with intent to distribute cocaine in violation of 21 U.S.C. § 846, possession with intent to distribute cocaine base in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B), two counts of possession with intent to distribute cocaine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C), use of a communication facility in violation of 21 U.S.C. § 843(b), and interstate transportation in aid of

racketeering enterprises in violation of 18 U.S.C. § 1952(a)(3). ECF No. 1. The defendant pleaded guilty before the Honorable Henry Coke Morgan, Jr. to conspiracy to distribute and possess with intent to distribute cocaine and interstate transportation in aid of racketeering enterprises on March 4, 2015, and was sentenced on June 2, 2015, to 240 months of incarceration and five years of supervised release. ECF Nos. 18, 35.

The defendant filed the instant motion for compassionate release on November 30, 2021.[1] ECF No. 64. The United States filed a response in opposition on December 22, 2021. ECF No. 69. This case was reassigned to this Court on March 17, 2023.

## II.    LEGAL STANDARDS

### A.    Exhaustion

Before the court may consider a motion for sentence reduction under 18 U.S.C. § 3582(c)(1)(A)(i), the defendant must exhaust their administrative rights to appeal the Bureau of Prisons' failure to bring a motion on the defendant's behalf. 18 U.S.C. § 3582(c)(1)(A). Alternatively, once 30 days have passed after the defendant requested relief from the warden of their facility, the defendant may file a motion with the court as though they had exhausted their administrative remedies. *Id.*; *see United States v. Muhammad*, 16 F.4th 126, 131 (4th Cir. 2021) (clarifying that defendants may satisfy the exhaustion requirement by waiting 30 days from the date of their initial

---

[1] The defendant filed a *pro se* letter requesting compassionate release on July 29, 2021, and the Honorable Roderick C. Young, to whom this case was previously assigned, ordered the government to respond. ECF Nos. 60, 61. Thereafter, the defendant was appointed counsel who re-filed the Motion for Compassionate Release. ECF Nos. 63, 64.

2

request to file a motion in the district court even if the warden has already responded to their request). The exhaustion requirement "is a non-jurisdictional claim-processing rule" and therefore "may be waived or forfeited." *Id.* at 130.

### B. Merits

A court may modify a term of imprisonment under 18 U.S.C. § 3582(c)(1)(A)(i) if, after considering the sentencing factors in 18 U.S.C. § 3553(a), it finds that "extraordinary and compelling reasons warrant such a reduction." *United States v. Hargrove*, 30 F.4th 189, 197-78 (4th Cir. 2022). The overarching purpose of the compassionate release mechanism guides district courts' consideration:

> When Congress authorized district courts, as a matter of discretion, to release an inmate from prison based on extraordinary and compelling reasons, it did so to introduce compassion as a factor in assessing ongoing terms of imprisonment, authorizing a district court to give greater weight to an inmate's personal circumstances — when sufficiently extraordinary and compelling — than to society's interests in the defendant's continued incarceration and the finality of judgments. Thus, motions for relief under § 3582(c)(1)(A)(i) ask courts to balance the severity of the inmate's personal circumstances, on the one hand, against the needs for incarceration, on the other.

*Id.* at 197. Courts in this district have generally considered the defendant's arguments regarding extraordinary and compelling reasons for sentence reduction first, then balanced the outcome of that analysis against the sentencing factors in section 3553. *E.g.*, *United States v. Ogun*, No. 4:12-cr-4, 2023 WL 2207114, at *7 (E.D. Va. Feb. 24, 2023); *United States v. Nurani*, No. 2:11-cr-34-3, 2023 WL 2058649, at *3 (E.D. Va. Feb. 16, 2023).

### *i.  Extraordinary & Compelling Reasons*

The Court may reduce a prisoner's sentence under § 3582(c)(1)(A)(i) if it finds "extraordinary and compelling reasons" to do so. The prisoner bears the burden of demonstrating such reasons. *See Hargrove*, 30 F.4th at 195.

The Sentencing Commission has promulgated a policy statement, U.S.S.G. § 1B1.13, which attempts to define what may constitute "extraordinary and compelling reasons." *United States v. McCoy*, 981 F.3d 271, 276 (4th Cir. 2020). The Sentencing Commission recently amended the policy statement. Effective November 1, 2023, the amended policy statement provides a non-exhaustive list of extraordinary and compelling reasons for reducing a sentence:

(1) the medical circumstances of the defendant, U.S.S.G. § 1B1.13(b)(1);

(2) the age of the defendant, U.S.S.G. § 1B1.13(b)(2);

(3) family circumstances of the defendant, U.S.S.G. § 1B1.13(b)(3);

(4) whether the defendant was a victim of abuse while incarcerated, U.S.S.G. § 1B1.13(b)(4);

(5) "other reasons," U.S.S.G. § 1B1.13(b)(5); or

(6) an unusually long sentence, if the defendant meets certain conditions, U.S.S.G. § 1B1.13(b)(6).

As amended, the policy statement provides that extraordinary and compelling reasons exist, in the medical context, in three circumstances. First, where:

> The defendant is suffering from a terminal illness . . . serious physical or medical condition . . . serious functional or cognitive impairment . . . [or] deteriorating physical or mental health because of the aging process . . . that substantially diminishes the ability of the defendant to

4

> provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

U.S.S.G. § 1B1.13(b)(1)(A–B). Second, where:

> The defendant is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death.

U.S.S.G. § 1B1.13(b)(1)(C). And third, where:

> . . . (i) The defendant is housed at a correctional facility affected or at imminent risk of being affected by (I) an ongoing outbreak of infectious disease, or (II) an ongoing public health emergency declared by the appropriate federal, state, or local authority;
>
> (ii) due to personal health risk factors and custodial status, the defendant is at increased risk of suffering severe medical complications or death as a result of exposure to the ongoing outbreak of infectious disease or the ongoing public health emergency described in clause (i); and
>
> (iii) such risk cannot be adequately mitigated in a timely manner.

U.S.S.G. § 1B1.13(b)(1)(D)(i–iii).

### ii. 18 U.S.C. § 3553(a) Factors

After completing the "extraordinary and compelling reasons" analysis, the district court must also consider the sentencing factors set forth in 18 U.S.C. § 3553(a). *United States v. Mumford*, 544 F. Supp. 3d 615, 617–20 (E.D. Va. 2021). Even if the Court finds extraordinary and compelling reasons to reduce a petitioner's sentence, it may ultimately deny a motion for compassionate release if its analysis of the § 3553(a) factors counsels against release. *United States v. Bethea*, 54 F.4th 826,

831 (4th Cir. 2022) (The "court has discretion to grant or deny relief based on . . . the salient § 3553(a) factors."). Those factors are:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed—

    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

    (B) to afford adequate deterrence to criminal conduct;

    (C) to protect the public from further crimes of the defendant; and

    (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established [by the Sentencing Commission];

(5) any pertinent policy statement [issued by the Sentencing Commission] [that is in effect on the date the defendant is sentenced except as provided in section 3742(g)];

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

## III. ANALYSIS

### A. Exhaustion

The Court finds that the defendant has satisfied the exhaustion requirement. The defendant submitted a request for compassionate release to the warden of his BOP facility on June 1, 2021. ECF No. 64 ¶ 2. The defendant is unaware as to whether the warden answered his motion or otherwise acted on the motion. *Id.* The Fourth Circuit has held that a defendant satisfies the threshold requirement either by exhausting their administrative remedies or by "wait[ing] 30 days from the date of their initial request to file a motion in the district court."[2] *Muhammad*, 16 F.4th at 131. The defendant waited at least 182 days to file this motion after initially requesting that the warden do so. Therefore, the Court finds that the defendant has satisfied the 30-day waiting requirement. 18 U.S.C. § 3582(c)(1)(A); *Muhammad*, 16 F. 4th at 131.

### B. Merits

#### i. *Extraordinary & Compelling Reasons*

The defendant argues that (1) he is especially susceptible to the COVID-19 virus and (2) the risk of death makes his sentence inordinately harsh. ECF No. 64 at 21–28. For the reasons stated below, the Court finds that the defendant has not demonstrated extraordinary and compelling reasons justifying his release.

---

[2] The defendant filed his *pro se* letter on July 29, 2021, which was 58 days after his initial request to the Warden. ECF No. 60.

First, the defendant argues that he has hypertension and obesity, which—along with his age—make him particularly susceptible to COVID-19. ECF. No. 64 at 1. However, the defendant does not explain the severity of his hypertension and his medical records do not indicate that he was ever treated for "hypertension," even though his blood pressure was checked on four different occasions. ECF No. 70 at 1 (SEALED). In any event, the Centers for Disease Control and Prevention ("CDC") found that there is "inconsistent evidence" on the impact hypertension has on COVID-19 severity.[3] "Thus, the causal connection between hypertension and serious illness from COVID-19 is speculative." *States v. Christopher*, No. 2:13-cr-117, 2023 WL 4055368, at *4 (E.D. Va. June 16, 2023).

The CDC advises that obesity "can make you more likely to get very sick from COVID-19," and that "[t]he risk of severe illness from COVID-19 increases sharply with higher BMI."[4] On the most recent day for which data is available in the record, the defendant's BMI had improved from 35 to 31.4. ECF No. 70 at 5 (SEALED). The CDC's definition of obesity is "BMI is 30kg/m or higher, but under 40kg/m."[5] Therefore, based on his BMI of 31.4, the defendant is obese but closer to overweight than severe obesity.

---

[3] Ctrs. for Disease Control and Prevention, *Underlying Conditions and the Higher Risk for Severe COVID-19*, https://perma.cc/K88E-59PE (last visited Sept. 11, 2024).
[4] CDC, *People with Certain Medical Conditions and COVID-19 Risk Factors*, https://perma.cc/KHK3-7A9G (last visited Sept. 11, 2024).
[5] *Supra* note 5.

The defendant is 42 years old, which places him outside the age range that carries increased risk, as recognized by the CDC.[6] The Court also notes that the defendant has refused a vaccination for COVID-19. ECF No. 70 at 3 (SEALED). However, the Virginia Department of Corrections has "administered a COVID-19 vaccine to more than 50 percent of its inmates, far outpacing the rate of COVID-19 vaccinations seen elsewhere."[7] And, as this Court has previously observed:

> The widespread availability of COVID-19 vaccines has, in general, decreased the risk that individuals will develop serious illness from COVID-19. As a result, the availability of vaccines has also generally decreased the likelihood that a defendant will be able to demonstrate "extraordinary and compelling reasons" that justify release based on the risk of serious illness from COVID-19.

*United States v. Smith*, No. 2:19-cr-127, 2023 WL 3901797, at *4 (E.D. Va. June 8, 2023) (footnote omitted) (explaining that courts have found that a defendant's vaccinated or unvaccinated status weighs against issuing relief).

The circumstances of the COVID-19 pandemic do not constitute extraordinary and compelling reasons to reduce the defendant's sentence.[8] The defendant contends

---

[6] *Supra* note 4.

[7] Virginia Department of Corrections, *More Than Half of Virginia DOC Inmates Have Received COVID-19 Vaccine*, https://perma.cc/XQ6Y-9SG3 (last visited Sept. 11, 2024).

[8] To the extent the defendant is arguing that his medical circumstances constitute extraordinary and compelling reasons, he has not met his burden to establish an imminent risk of contracting a severe case of COVID-19. The defendant is currently incarcerated at FCI Petersburg Low. Federal Bureau of Prisons, *BOP Inmate Locator*, https://perma.cc/L9BA-586G (last visited Sept. 11, 2024). To date there are zero "open cases" of COVID-19 and three COVID-related deaths at that facility, which indicates that there is no ongoing outbreak or an imminent risk of one. Federal Bureau of Prisons, *BOP COVID-19 Statistics*, https://perma.cc/T9C7-XPVZ (last visited Sept. 11, 2024).

that the conditions of his confinement during COVID-19 have made him more at risk of contracting and dying from COVID-19. ECF No. 64 ¶ 4. Specifically, the defendant highlights the spread of COVID-19 in his facility and the lack of cleanliness within the prison. ECF No. 64 ¶ 5–6. The severity of the conditions of confinement because of the COVID-19 pandemic are certainly a point of concern, and the Court does not take the defendant's argument lightly. However, the defendant has not demonstrated that these "conditions [were] so deficient, or that the impacts upon him were so unusually severe, as to establish . . . extraordinary and compelling reasons" for release arising from his experience during the COVID-19 pandemic. *United States v. Curtin*, No. 8:14-cr-467, 2023 WL 8258025, at *2 (D. Md. Nov. 29, 2023). And as of May 11, 2023, there is no longer a federal public health emergency regarding COVID-19.[9]

Taken together, the defendant's asserted health conditions and demographic factors—including his age, hypertension and obesity—do not establish a particularized risk of serious illness from COVID-19 such that relief is warranted.

Second, the risk that the defendant could die from COVID-19 while incarcerated does not render his sentence unusually long such that he is entitled to relief. The defendant asserts that he is facing a "potential death sentence, which is not what Congress or the Court intended at sentencing." ECF No. 64 ¶ 26. However,

---

[9] Ctrs. for Disease Control and Prevention, *End of the Federal COVID-19 Public Health Emergency (PHE) Declaration*, https://perma.cc/XY2J-J2C2 (last visited Sept. 11, 2024).

10

as discussed above, the defendant's risk of dying from COVID-19 is not high. In fact, the defendant tested positive for COVID-19 on December 16, 2020, and recovered without any follow up medical treatment or visit. ECF No. 70 (SEALED). Thus, even if any risk of death that was unexpected at the time of sentencing could be sufficient to establish extraordinary and compelling reasons for compassionate release, the defendant does not demonstrate that such a risk exists here.[10]

Accordingly, the Court finds that the defendant has not met his burden to show extraordinary and compelling reasons that warrant a reduction in his sentence.

### ii.   *18 U.S.C. § 3553(a) Factors*

Even if the Court determined that the defendant had demonstrated extraordinary and compelling reasons that might warrant compassionate release, the factors enumerated in 18 U.S.C. § 3553(a), when viewed in light of the defendant's circumstances as discussed above, counsel against relief.

The "nature and circumstances of the offense" are serious. The defendant pleaded guilty to Conspiracy to Distribute and Possess with intent to Distribute Cocaine and Interstate Transportation in Aid of Racketeering Enterprises. He was attributed with 26,319.825 grams of cocaine base, 1,268 grams of marijuana, and .81

---

[10] To the extent the defendant argues that his record of rehabilitation constitutes an extraordinary and compelling reason, that ground is insufficient to justify release. The Court acknowledges that the defendant has made considerable rehabilitative efforts while incarcerated. He has enrolled and completed a Peer Group First Step Act Program and a Non-Residential Drug Abuse Program. ECF No. 72. However, the policy statement clarifies that "rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason," but rather "may be considered in combination with other circumstances in determining whether and to what extent a reduction in the defendant's term of imprisonment is warranted." U.S.S.G § 1B1.13(d).

gram of Alprazolam. ECF No. 38 ¶ 10 (SEALED). The defendant also received enhancements for possession of a firearm, maintaining drug premises, and a manager/supervisor role in the enterprise. *Id.* at 9 (SEALED). Given the "seriousness of the offense," the sentence imposed must be sufficient to "promote respect for the law," "provide just punishment for the offense," and "afford adequate deterrence to criminal conduct." 18 U.S.C. § 3553(a)(2).

As to the "history and characteristics of the defendant," the Court is particularly influenced by the defendant's criminal history. The defendant has prior convictions for, *inter alia*, possession of marijuana, possession of drug paraphernalia, and possession with intent to distribute a narcotic. ECF No. 38 at 10–11 (SEALED). As a result, the defendant received a criminal history category of II. *Id.* at 12. This history suggests a lack of respect for the law that weighs against granting relief.

The "kinds of sentences available" and the "sentencing range" also counsel against granting relief. The defendant's offense advisory sentencing guidelines range was 292–365 months. ECF No. 38 at 20. Instead, the defendant received a total sentence of 240 months of incarceration and five years of supervised release. ECF No. 35 at 2. If the defendant were released today, he would have served just under half of his sentence. *United States v. Kibble*, 992 F.3d 326, 331 (4th Cir. 2021) (district courts are "entitled to consider the amount of time [the defendant] already had served as one factor in the § 3553(a) analysis"). Given the seriousness of the defendant's conduct and his criminal history, alternative sentences such as home confinement or supervised release would not "reflect the seriousness of the offense, . . . promote

respect for the law, . . . [or] provide just punishment for the offense." 18 U.S.C. § 3553(a)(2)(A).

No single fact in the defendant's background, either positive or negative, swayed the Court's determination as to the 18 U.S.C. § 3553(a) analysis, because the Court—as it must—has looked at the defendant's background as a whole, including whether the passage of time has changed the balance that the Court should strike in its review of the factors and the defendant's motion. However, after weighing the factors enumerated in § 3553(a) and the practical implications of early release, the Court finds that a sentence reduction is not warranted.

## IV.   CONCLUSION

The Court finds that the defendant has not met his burden of showing extraordinary and compelling reasons that warrant a reduction in his sentence. The Court also finds that the sentencing guidelines under 18 U.S.C. § 3553(a) weigh against granting the defendant's motion. Accordingly, the Motion for Compassionate Release is **DENIED**.

The Clerk is **DIRECTED** to forward copies of this Order to all counsel of record.

**IT IS SO ORDERED.**

/s/ Jamar K. Walker
United States District Judge

Newport News, Virginia
September 11, 2024

13